NO. 5-07-0385

NOTICE

Decision filed 12/03/08. The text of
this decision may be changed or
corrected prior to the filing of a
Petition for Rehearing or the
disposition of the same.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

KENNETH DAVIS, CHARLES DEATON, FRED ) Appeal from the
DEATON, ROBERT ENGLE, BOB GANZ, ) Circuit Court of
THOMAS SAATHOFF, as Special Administrator ) Saline County.
for Annette May, LARRY NOLEN, ARTHUR )
PHILLIPS, PHILIP RICHERSON, LARRY )
WINTERS, and WENDELL YEARY, )
 )
   Plaintiffs-Appellees, )
 )
v. ) Nos. 04-L-20, 04-L-26, 04-L-27,
 )    04-L-30, 04-L-36, 04-L-65,
AMERICAN OPTICAL CORPORATION, )    & 04-L-89
 )
   Defendant and Third-Party Plaintiff-Appellant, )
 )
and )
 )
MINNESOTA MINING AND MANUFACTURING )
COMPANY, INC., n/k/a THE 3M COMPANY, )
 )
   Defendant and Third-Party Plaintiff-Appellee )
 )
(The American Coal Company, a/k/a Arch of )
Illinois *et al.*, ) Honorable
 ) Todd D. Lambert,
   Third-Party Defendants-Appellees). ) Judge, presiding.
_____

NO. 5-07-0386

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

DAVID BASHAM, JOSEPH CLARK, ROY GENE ) Appeal from the
CULPEPPER, KENNETH DAVIS, CHARLES ) Circuit Court of
DEATON, FRED DEATON, DAVID DUDLEY, ) Saline County.
ROBERT ENGLE, BOB GANZ, DANNY GULLEY, )

1

KEITH HUGHES, THOMAS SAATHOFF, as Special )
Administrator for Annette May, BARRY )
McDYER, LARRY NOLEN, KEVIN PEYTON, )
ARTHUR PHILLIPS, MARTY RICHARDSON, )
WILLIAM STALEY, LYMAN TANNER, LYNDELL )
WALKER, WENDELL YEARY, )
    )
    Plaintiffs-Appellees, )
    )
v. ) Nos. 04-L-26, 04-L-27, 04-L-36,
    )     04-L-37, 04-L-51, 04-L-52,
AMERICAN OPTICAL CORPORATION, )     04-L-53, 04-L-65, 04-L-89,
    )     06-L-24, 06-L-37, &
    Defendant and Third-Party Plaintiff-Appellant, )     06-L-38
    )
and )
    )
MINE SAFETY APPLIANCES COMPANY, )
    )
    Defendant and Third-Party Plaintiff-Appellee )
    )
(Amax Coal Company, f/k/a Cyprus Amax Coal )
Company *et al.*, ) Honorable
    ) Todd D. Lambert,
    Third-Party Defendants-Appellees). ) Judge, presiding.
_____

    JUSTICE SPOMER delivered the opinion of the court:

    In this consolidated appeal, defendant American Optical Corp. (AOC) appeals the orders of the circuit court of Saline County that, *inter alia*, found the settlement agreements entered into between the plaintiffs in each case and defendants Minnesota Mining and Manufacturing Company, Inc., now known as The 3M Company (3M), and Mine Safety Appliances Company (MSA), respectively, to be in good faith within the meaning of section 2(c) of the Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/2(c) (West 2006)) and that dismissed AOC's contribution claims against all the third-party defendants in each case. Because we conclude that the trial court's rulings were not an abuse of discretion, we affirm both orders.

FACTS

    The facts necessary for our disposition of this appeal are uncontested. The complaints

2

filed by the plaintiffs in each case claim that the masks and respirators manufactured and supplied by 3M, MSA, and AOC to various coal mine owners/operators for use by the plaintiffs were ineffective in preventing the plaintiffs from contracting coal workers' pneumoconiosis. There is similar litigation pending in other counties throughout southern Illinois involving the same defendants. 3M, AOC, and MSA filed third-party claims for contribution against the various mine owners/operators where the plaintiffs worked during their careers, alleging that the owners/operators did not provide an adequately safe work environment for the plaintiffs. Some third-party mine defendants held workers' compensation liens against some of the plaintiffs' claims for damages in Saline County and other counties, but with regard to other plaintiffs, they did not hold workers' compensation liens because they were not the last employer of those plaintiffs. See 820 ILCS 310/1(d), 5(b) (West 2006).

Negotiations between the various parties commenced, and ultimately two settlement agreements were reached. In each case, the plaintiffs and 3M and MSA, respectively, filed motions requesting that the settlement agreements between them be found to be in good faith within the meaning of section 2(c) of the Act (740 ILCS 100/2(c) (West 2006)). As a part of the settlement agreement in each case, the plaintiffs and 3M and MSA, respectively, sought a dismissal with prejudice of all the claims against 3M and MSA, as well as the third-party claims that the nonsettling defendant, AOC, had filed against all the third-party defendant mine owners/operators. The settlement agreements also provided that 3M and MSA, respectively, retained their contribution claims against the third-party defendants. AOC filed an objection to the joint motions for a good-faith finding.

On June 4, 2007, a hearing was held on the joint motions for a good-faith finding. At the hearing, counsel for AOC explained to the court that AOC objected to the proposed orders that had been submitted with the joint motions for a good-faith finding to the extent

3

that the proposed orders would extinguish AOC's contribution claims against those third-party defendants that did not hold workers' compensation liens against the claims of various plaintiffs. AOC's objection, as stated to the circuit court, was that those third-party defendants that did not have workers' compensation liens to waive were paying no consideration for their release. In response, counsel for the plaintiffs explained that 3M and MSA were paying money to settle their own liability as well as the liability of the third-party defendants, thereby giving 3M and MSA the sole right to maintain a contribution claim against those third-party defendants.

The plaintiffs' counsel tendered "Exhibit A" and "Exhibit B" to the circuit court during the hearing. These exhibits reflected the terms of the settlements between the plaintiffs and 3M and MSA, respectively. Counsel for the plaintiffs explained that all the defendants, including AOC, had stipulated that the amount of each settlement was confidential. Counsel for AOC then stated to the court, "And, Judge, just so I'm clear, and I'm sure this is clear, we're not objecting to the settlements themselves or the amount, and we're not demanding that we know what the amount of those settlements are." Counsel for AOC then explained that AOC was objecting solely to the scope of the release, and AOC argued that its third-party claims against those third-party defendants that did not have workers' compensation liens to waive should not be extinguished "without any consideration from that third-party defendant." Importantly, exhibits A and B were not placed in the court file and are not a part of the record on appeal.

In response to AOC's argument, the plaintiffs' counsel again stated that the settling defendants had agreed to pay an amount sufficient to cover the third-party defendants' share of the fault as well as their own. Counsel for the plaintiffs further explained:

"[W]hat they're doing is in affect [*sic*] cutting out the non[]settling defendant and making themselves the exclusive holder of the third-party claims for contribution

4

because they've bought out the liability of the [third-party defendants] as to everyone in the world but themselves.  In affect [*sic*] their contribution action is looking to get back from the [third-party defendants] the money they overpaid me to cover the [third-party defendants'] liability."

Counsel for AOC also stated to the circuit court:

"[W]e haven't asked to look at any of these numbers.  The Court may look at these numbers.  But I guess the real problem is you determining[,] [I]s this okay[?] [I]s this in good faith for them to pay something they alledge [*sic*] to be more than their pro rata share to get rid of those third-party defendants[?]"

Although 3M, MSA, and AOC all stipulated that the amount of each settlement would remain confidential and although the settlement agreements are not a part of the record on appeal, it is clear from the transcript of the hearing that the amounts paid by 3M and MSA were not apportioned in the settlement agreements to show the amount paid to settle the plaintiffs' direct claims against them and the amount paid to release the various third-party defendants.

On June 15, 2007, the circuit court entered orders granting both joint motions for a good-faith finding.  Both orders include a provision that dismisses with prejudice AOC's contribution claims against all the third-party defendants.  Both orders also state that pursuant to Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), there is no just reason for delaying either enforcement or appeal.  On July 12, 2007, AOC filed a timely notice of appeal.

### ANALYSIS

"[W]hether a settlement satisfies the good-faith requirement as contemplated by the *** Act is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." *Johnson v. United Airlines*, 203 Ill. 2d 121, 135 (2003).

5

"A good-faith determination is reviewed on appeal for an abuse of discretion." *Johnson*, 203 Ill. 2d at 135. Although AOC characterizes the issue to be resolved by this court as whether the release of the non-lienholding third-party defendants in the settlement agreements between the plaintiffs and 3M and MSA, respectively, without consideration on the part of, *or on behalf of*, the non-lienholding third-party defendants, is invalid, it is clear from the record that consideration was paid on behalf of these third-party defendants, even though the amounts were not apportioned in the settlement agreements. The transcript makes it clear that the plaintiffs, 3M, and MSA all represented that money was paid to the plaintiffs sufficient to settle the claims against them as well as the claims against the non-lienholding third-party defendants. Accordingly, before this court proceeds to review the circuit court's determination that the settlement agreements were reached in good faith, we must recharacterize the issues on appeal and determine whether a settling defendant can pay consideration for the release of other potential tortfeasors and, if so, whether the amounts paid must be apportioned in the settlement agreements. For the reasons explained below, we hold that a settling defendant can pay consideration for the release of other potential tortfeasors and that there is no requirement that the settlement amounts be apportioned.

In order to address the issues before us, we turn to the terms of the Act. The Act creates a statutory right of contribution in actions "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death" (740 ILCS 100/2(a) (West 2006)), to the extent that a tortfeasor pays more than his *pro rata* share of the common liability. 740 ILCS 100/2(b) (West 2006). The Act provides in section 2(c) as follows:

> "(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability

6

for the injury or wrongful death *unless its terms so provide* but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Emphasis added.) 740 ILCS 100/2(c) (West 2006).

Accordingly, the Act provides for the release of any tortfeasor under the terms of a good-faith settlement agreement. The Act also sets forth the rights of contribution for tortfeasors who have settled with a claimant. Pursuant to section 2(d) of the Act, "The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(d) (West 2006). In addition, pursuant to section 2(e) of the Act, "A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(e) (West 2006). By implication, this section would allow a settling tortfeasor who pays more than his *pro rata* share in order to obtain the release of another tortfeasor to maintain his claim for contribution against that tortfeasor. In fact, a settling tortfeasor who pays more than his *pro rata* share in order to effectuate a settlement that releases another tortfeasor would be the only party who could proceed against the tortfeasor on whose behalf the settling tortfeasor paid.

AOC has cited no authority that precludes a defendant from paying consideration for the release of other parties, and this court has found none. In fact, this court finds that to preclude a defendant from doing so would discourage settlements, which would run contrary to one of the major policies underlying the Act. See *Johnson v. United Airlines*, 203 Ill. 2d 121, 133 (2003) (holding that the two important public policy considerations underlying the Act are the encouragement of settlements and the equitable apportionment of damages among tortfeasors). In addition, such a rule would be contradictory to the language of the Act itself, which states that if the terms of the settlement so provide, a release of other tortfeasors may

7

be effective and provides, by implication, that a settling tortfeasor who pays more than his *pro rata* share in order to procure the release of another tortfeasor is entitled to recover contribution from the tortfeasor whose liability is released by the settlement. 740 ILCS 100/2(c), (e) (West 2006).

In addition, this court has interpreted section 2(d) of the Act and has found that nonsettling defendants are precluded from proceeding in contribution against all the defendants who are released by the terms of a good-faith settlement, *regardless of whether they are parties to the settlement agreement. Brown v. Union Tank Car Co.*, 197 Ill. App. 3d 357, 361 (1990). Accordingly, if the terms of the settlement, including the release of the non-lienholding third-party defendants, were entered into in good faith, the circuit court properly extinguished AOC's contribution claims against those third-party defendants. "The 'good faith' of a settlement is the only limitation which the Act places on the right to settle[,] and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling tortfeasor." *Johnson*, 203 Ill. 2d at 128.

Although the record makes clear that the amounts paid by 3M and MSA were not apportioned in the settlement agreements to show the amount paid to settle the plaintiffs' direct claims against them and the amount paid to release the various third-party defendants, we find no requirement in the Act or any other authority that the amounts be so apportioned. As explained above, allowing a settling tortfeasor to pay more than his *pro rata* share in order to procure the release of another tortfeasor promotes one of the important public policies underlying the Act–the encouragement of settlements. In order to ensure that the settlement agreements promoted the other important public policy underlying the Act–the equitable apportionment of damages among tortfeasors, the circuit court, under the standards enunciated in *Johnson*, was required to view the amounts of the settlements in relation to the probability of recovery, the defenses raised, and the potential legal liability of all the

8

tortfeasors whose liability would be discharged by the settlements. 203 Ill. 2d at 137. For each settlement, if the circuit court found, in light of these factors, that the amount paid was a reasonable amount to discharge the liability of all the tortfeasors to be released by the settlement, the good-faith requirement of the Act would be satisfied because AOC would receive a setoff in the amount of the settlements. See 740 ILCS 100/2(c) (West 2006). Although an apportionment in the settlement agreements to show the amounts 3M and MSA paid to settle the plaintiffs' direct claims against them and the amounts paid to release the various third-party defendants might have aided the circuit court in its analysis, there was nothing preventing the circuit court from conducting this analysis in the aggregate.

Furthermore, although the Act does not define the term "good faith," the Illinois Supreme Court has held that when a court decides whether a settlement was negotiated in good faith, it must strike a balance between the two important public policy considerations underlying the Act–the encouragement of settlements and the equitable apportionment of damages among tortfeasors. *Johnson*, 203 Ill. 2d at 133. To that end, the settling parties carry the initial burden of making a preliminary showing of good faith. *Johnson*, 203 Ill. 2d at 132. This burden is satisfied if the settling parties show the existence of a legally valid settlement agreement, including a showing that consideration was given and received and that the settlement is fair and reasonable in light of the aforementioned public policies. *Johnson*, 203 Ill. 2d at 131-32. The burden then shifts to the nonsettling defendant to establish a lack of good faith by a preponderance of the evidence. *Johnson*, 203 Ill. 2d at 133. As explained above, "[t]he amount of a settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party's potential legal liability." *Johnson*, 203 Ill. 2d at 137.

In order to determine whether the circuit court abused its discretion in its determination of the foregoing, this court would have to review the amounts of the

9

settlements. However, "Exhibit A" and "Exhibit B," which were tendered to the circuit court, are not a part of the record on appeal. AOC consented to the confidentiality of these settlements and did not require that they be placed in the court file, under seal or otherwise. "On review, the appellant has the burden of presenting the court with an adequate record regarding the claimed error [citation], and any doubts which may arise from the incompleteness of the record will be resolved against the appellant [citation]." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 546-47 (1996). Accordingly, we must presume that the circuit court's determination on this issue was proper.

## CONCLUSION

For the foregoing reasons, the orders of the circuit court that granted the joint motions for a good-faith finding filed by the plaintiffs and 3M and MSA, respectively, are affirmed.


Affirmed.


APPLETON and CHAPMAN, JJ., concur.

NO. 5-07-0385

IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| | |
|---|---|
| KENNETH DAVIS, CHARLES DEATON, FRED DEATON, ROBERT ENGLE, BOB GANZ, THOMAS SAATHOFF, as Special Administrator for Annette May, LARRY NOLEN, ARTHUR PHILLIPS, PHILIP RICHERSON, LARRY WINTERS, and WENDELL YEARY, | Appeal from the Circuit Court of Saline County. |
| Plaintiffs-Appellees, | |
| v. | Nos. 04-L-20, 04-L-26, 04-L-27, 04-L-30, 04-L-36, 04-L-65, & 04-L-89 |
| AMERICAN OPTICAL CORPORATION, | |
| Defendant and Third-Party Plaintiff-Appellant, | |
| and | |
| MINNESOTA MINING AND MANUFACTURING COMPANY, INC., n/k/a THE 3M COMPANY, | |
| Defendant and Third-Party Plaintiff-Appellee | |
| (The American Coal Company, a/k/a Arch of Illinois *et al.*, | Honorable Todd D. Lambert, |
| Third-Party Defendants-Appellees). | Judge, presiding. |

_____

NO. 5-07-0386

IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| | |
|---|---|
| DAVID BASHAM, JOSEPH CLARK, ROY GENE CULPEPPER, KENNETH DAVIS, CHARLES DEATON, FRED DEATON, DAVID DUDLEY, ROBERT ENGLE, BOB GANZ, DANNY GULLEY, KEITH HUGHES, THOMAS SAATHOFF, as Special Administrator for Annette May, BARRY McDYER, LARRY NOLEN, KEVIN PEYTON, ARTHUR PHILLIPS, MARTY RICHARDSON, WILLIAM STALEY, LYMAN TANNER, LYNDELL WALKER, WENDELL YEARY, | Appeal from the Circuit Court of Saline County. |
| Plaintiffs-Appellees, | |
| v. | Nos. 04-L-26, 04-L-27, 04-L-36, 04-L-37, 04-L-51, 04-L-52, 04-L-53, 04-L-65, 04-L-89, 06-L-24, 06-L-37, & 06-L-38 |
| AMERICAN OPTICAL CORPORATION, | |
| Defendant and Third-Party Plaintiff-Appellant, | |
| and | |

MINE SAFETY APPLIANCES COMPANY,     )
                                    )
    Defendant and Third-Party Plaintiff-Appellee     )
                                    )
(Amax Coal Company, f/k/a Cyprus Amax Coal     )
Company *et al.*,                   )     Honorable
                                    )     Todd D. Lambert,
    Third-Party Defendants-Appellees).     )     Judge, presiding.

| | |
|---|---|
| **Opinion Filed**: | December 3, 2008 |

| | |
|---|---|
| **Justices**: | Honorable Stephen L. Spomer, J. |
| | Honorable Thomas R. Appleton, J., and Honorable Melissa A. Chapman, J., Concur |

| | |
|---|---|
| **Attorneys for Appellant** | Debra K. Zahalsky, Joseph R. Brown, Jr., Lucco, Brown, Threlkeld & Dawson, LLP, 224 St. Louis Street, Edwardsville, IL 62025 |

| | |
|---|---|
| **Attorneys for Appellees** | John J. Kurowski, Candice C. Kusmer, Kurowski, Bailey & Shultz, LLC, 24 Bronze Pointe, Swansea, IL 62226 (for The 3M Company) |
| | K. Lindsay Rakers, Robert Rowland, Goldenberg, Heller, Antognoli & Rowland, P.C., 2227 South State Route 157, P.O. Box 959, Edwardsville, IL 62025 (for Kenneth Davis, Charles Deaton, Robert Engle, Bob Ganz, and Thomas Saathoff, as Special Administrator) |
| | William A. Schmitt, Dayna L. Johnson, Greensfelder, Hemker & Gale, P.C., 12 Wolf Creek Drive, Swansea, IL 62226 (for Arch of Illinois) |
| | W. Jeffrey Muskopf, Mark R. Feldhaus, Lashly & Baer, P.C., 714 Locust Street, St. Louis, MO 63101-1699 (for Mine Safety Appliances Co.) |
| | Theodore F. Kommers, Gould & Ratner LLP, 222 N. LaSalle Street, Suite 800, Chicago, IL 60601; Pamela Lacey, Attorney at Law, 123 East Main Street, P.O. Box 39, Benton, IL 62812 (for Freeman United Coal Mining Corp.) |